Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000531
31-MAY-2017
12:28 PM

NO. CAAP-16-0000531

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
CHRISTINE KIM, Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(HONOLULU DIVISION)
(CASE NO. 1DTA-15-04670)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Leonard and Ginoza, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Christine Kim (Kim) with operating a vehicle under the influence of an intoxicant (OVUII) (Count 1); and refusal to submit to testing (Count 2). Prior to trial, the State dismissed Count 2.

On November 25, 2015, the District Court of the First Circuit (District Court) set December 29, 2015, as the deadline for pretrial motions. On June 20, 2016, Kim filed a motion to suppress evidence. On June 22, 2016, the District Court held a bench trial on the OVUII charge. Kim did not mention her suppression motion prior to or during the trial, and the District Court did not rule on the motion. At the conclusion of the trial, the District Court found Kim guilty of OVUII. The District Court sentenced Kim and entered its Judgment on June 22, 2016.

On appeal, Kim contends that: (1) the District Court[1] erred in failing to obtain the parties' express agreement to combine her suppression motion with the trial and in failing to rule on the motion prior to trial; (2) the District Court failed to obtain a valid waiver of her right to testify; (3) the District Court drew negative inferences from Kim's failure to testify thereby shifting the burden of proof to Kim; and (4) her trial counsel was ineffective for failing to move to strike hearsay testimony provided in response to trial counsel's question. We affirm.

BACKGROUND

At about 10:55 p.m., Honolulu Police Department Officer Kaimiike Aguiar (Officer Aguiar) was called to assist with a motor vehicle accident. Officer Aguiar arrived at a Rosebank Place address and saw a black BMW sedan "kinda teetering or -- on the -- on top of the grassy median between two driveways." The BMW was stuck on the grass median and was aligned perpendicular to both driveways. Rosebank Place is a public road, and it is the only road providing access to the driveways.

Kim was seated in the driver's seat of the BMW and was on the phone. Although Officer Aguiar did not hear what Kim was talking about over the phone, he believed "she was on the phone trying to call someone to pick her up or something."

Officer Aguiar asked Kim if she was injured, and Kim related that she was not injured. Officer Aguiar then asked Kim what had happened. Kim told Officer Aguiar that "she got lost and she tried to turn around." Kim also told Officer Aguiar that she was the driver and the only occupant of the vehicle, and that when she was trying to turn around, she hit a dip or a ditch.

While Kim was talking to him, Officer Aguiar noticed "a strong odor of alcoholic beverage emitting from her breath[.]" Kim's "eyes were red, bloodshot, and glassy." Officer Aguiar gave Kim the option of and asked her to participate in field

---

[1] The Honorable William M. Domingo presided over the proceedings relevant to this appeal.

sobriety tests. Kim agreed to exit her car and to participate in the tests. After Kim got out of her car, she swayed from side to side while standing. Kim stumbled and veered to the left or the right as she walked with Officer Aguiar to an area where he conducted the tests.

Kim performed poorly on the walk-and-turn and one-leg-stand tests. On the walk-and-turn test, she did not follow instructions, lost her balance, did not walk heel to toe, did not walk in a straight line, took the wrong number of steps, and stumbled while turning. On the one-leg-stand test, Kim swayed, raised her arms, and put her foot down numerous times during the period she was supposed to keep it raised. Based on all his observations, Officer Aguiar determined that Kim was impaired.

DISCUSSION

We resolve the issues raised by Kim on appeal as follows.

I.

Kim argues that the District Court erred by failing to obtain the parties' express agreement to combine her suppression motion with the trial and by failing to rule on the motion prior to trial. We disagree. Kim's motion was untimely, filed long after the pretrial motions deadline had expired and just two days before trial; she failed to seek an extension of the pretrial motions deadline; and she failed to notify the District Court that the motion was pending or seek a ruling on the motion prior to or during trial. Under these circumstances, we conclude that Kim waived the right to challenge her conviction based on her claims of error regarding the suppression motion.

Hawai'i Rules of Penal Procedure (HRPP) Rule 12(b)(3) (2007) requires that motions to suppress evidence "must be raised prior to trial[.]" HRPP Rule 12(c) (2007) establishes deadlines for filing pretrial motions and states: "Pretrial motions and requests must be made within 21 days after arraignment unless the court otherwise directs." HRPP Rule 12(f) (2007) further provides that: "Failure by a party to raise defenses or objections or to make requests which must be made prior to trial,

3

within the time set by the court pursuant to section (c), or within any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver."

Here, on November 25, 2015, the District Court set December 29, 2015, as the pretrial motions deadline. Kim filed her motion to suppress on June 20, 2016, more than five months after the deadline had passed and just two days before the scheduled trial. Nothing in the record indicates that Kim requested an extension of time to file her suppression motion or that she made any showing of cause for the belated filing. Accordingly, pursuant to HRPP Rule 12(f), Kim waived her objection to the evidence she moved to suppress.

Moreover, on June 22, 2016, when the trial was held, at no time prior to or during trial did Kim bring her untimely pending motion to the attention of the District Court. In addition, the evidence presented at trial provides no support for Kim's claim that the evidence of her field sobriety tests were subject to suppression because her "traffic stop" detention was unreasonable and she was forced under duress to perform the field sobriety tests. Under the circumstances presented, we see no plain error with respect to the suppression-motion claims of error raised by Kim on appeal.

II.

We reject Kim's claim that the District Court failed to obtain a valid waiver of her right to testify under the Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995), line of cases. The record shows that the District Court's ultimate colloquy with Kim fully complied with the requirements of Tachibana. The District Court's ultimate colloquy included its obtaining Kim's verification that she understood that "[i]f you decide not to testify, the Court cannot hold it against you that you're not going to testify." The District Court's ultimate colloquy compensated for the District Court's failure in its pre-trial advisement to advise Kim that her exercise of the right not to testify may not be used by the fact finder to decide the case.

4

See State v. Monteil, 134 Hawai'i 361, 373, 341 P.3d 567, 579 (2014). Looking to the totality of the facts and circumstances of this case, see State v. Han, 130 Hawai'i 83, 89, 306 P.3d 128, 134 (2013), we conclude that Kim validly waived her right to testify.

III.

Kim's contention that the District Court drew negative inferences from her failure to testify thereby shifting the burden of proof to Kim is without merit. The backdrop for Kim's claim is as follows.

A.

Officer Aguiar testified on direct examination that when he asked Kim what had happened, Kim told him that "she got lost and she tried to turn around."

On cross-examination, Kim's counsel asked Officer Aguiar if he knew who called the police to report the accident, and Officer Aguiar provided the following answer:

> Q    Do you know who called and -- I know you mentioned Officer Miyashiro mentioned it to you.
>
> Do you know who called?
>
> A    No, I cannot remember. I know I spoke to the -- there's the two driveways. The one in the right driveway, I spoke to them, and they related the -- they were residents, and they related that they don't know the --
>
> Q    Oh, okay.
>
> A    -- defendant, sorry --
>
> Q    All right.
>
> A    -- or the vehicle.

Kim's counsel did not object to Officer Aguiar's answer or move to strike it.

In explaining its verdict, and its finding that Kim drove on a public road before her car became stuck between the private driveways, the District Court stated:

> October 3rd, 2015, about . . . 10:55 p.m., Officer Aguiar was called to [an address at] Rosebank Place which is in the City and County of Honolulu, State of Hawaii. Rosebank Place is a public highway. It's in a cul-de-sac area. He was called by . . . backup officer Miyashiro who was called for the motor vehicle accident . . . .

5

When he arrived, he noticed that the defendant's car was perpendicular in the driveway. If we're looking at exhibit -- Defense Exhibit A where the X is -- I'll refer to the document. . . .

. . . .

. . . And as he approached, he -- he identified Ms. Kim as the driver. His testimony was that the front of the car was facing to the left driveway, and that the car was teetering between the two driveways on that median where the X is at this point.

As he spoke with her . . . to find out whether or not she was okay, he asked if she was okay. She stated she was not injured, and she was okay. And he asked what happened. She said she got lost and tried to turn around.

With that statement and also the statement that I heard earlier on cross-examination which was elicited by -- to Officer Aguiar that he spoke with the people on the right driveway and that they weren't -- they didn't know who defendant was at this point, I take a reasonable inference that when she said she got lost, that she was driving with -- her car that evening in relatively short period of time before then, got lost, meaning she didn't know where to go at this point.

There was no testimony that she lived either on Rosebank Street, and the likelihood of her getting lost at her own residence is -- is what I take into account in this situation. So I will make a finding that she did not live on rose -- Rosebank Street, and, therefore, I find that -- the element as far as her on the public highway and was driving on the public highway. If give an analogy, if she had driven off the road and ended up in someone's house, then I don't know if that would be enough to find that she was not on a public highway before then. So that's my ruling at that stage.

(Emphasis added.)

B.

Kim cites the District Court's comment that "[t]here was no testimony that she lived either on Rosebank Street, and the likelihood of getting lost at her own residence is -- is what I take into account in this situation."[2] Kim relies on this comment as showing that the District Court "used [Kim's] silence against her in rendering its verdict" and "shifted the burden of

---

[2] While the District Court referred to "Rosebank Street," it appears that it meant to refer to "Rosebank Place" as the evidence was undisputed that Kim's car was stuck between driveways located on Rosebank Place. We will hereinafter use "Rosebank Place," and not "Rosebank Street," when discussing the District Court's remarks.

proof to [Kim]." Kim argues that her conviction must be overturned since the District Court used the negative inference from Kim's failure to "testify that she lived on Rosebank [Place] against her[.]"

Contrary to Kim's claim, the District Court's comment that Kim cites does not show that the District Court used her failure to testify against her or shifted the burden of proof to her. Indeed, the District Court never referred to Kim's failure to testify. It simply stated that "there was no testimony" that Kim lived on Rosebank Place. Viewed in the context of the District Court's preceding remarks, the District Court's statement that "there was no testimony" that Kim lived on Rosebank Place does not appear to be a reference to Kim's failure to testify, but rather an acknowledgment of the absence of any evidence at trial to contradict the compelling evidence that Kim did not live at the scene of the accident.

Prior to its remarks challenged by Kim, the District Court had focused on Officer Aguiar's testimony on direct examination that Kim said her car became stuck when she got lost and tried to turn around. The District Court also referred to Officer Aguiar's testimony on cross-examination that he spoke to people at one of the driveways who said they did not know Kim.

The clear and unmistakable inference from Kim's statement that she became stuck in the driveways because she "got lost and tried to turn around" is that Kim did not live at the Rosebank Place location where her car was stuck. People do not get lost in their own driveway. This inference was corroborated by statements of people who lived where Kim's car was stuck that they did not know Kim. The District Court's observation that there was no testimony to rebut the State's strong showing that Kim did not live at the scene of the accident and therefore must have been driving on the public road leading to the driveways cannot reasonably be construed as the District Court's improper drawing of a negative inference from Kim's failure to testify.

The prohibition against drawing negative inferences from a defendant's decision not to testify is a bedrock principle of criminal law. We decline to infer that a trial judge engaged in this form of serious judicial error based on the tenuous and unconvincing showing made by Kim in this case. We conclude that the record does not support Kim's contention that the District Court drew negative inferences from her failure to testify and shifted the burden of proof to her.

IV.

Kim contends that her trial counsel provided ineffective assistance in failing to move to strike Officer Aguiar's hearsay testimony on cross-examination that residents he spoke to in one of the driveways said they did not know Kim or her vehicle. We conclude that Kim has failed to meet her burden of establishing ineffective assistance of counsel.

A defendant has the burden of proving ineffective assistance of counsel and must satisfy the following two-part test: First, the defendant must show that "there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence"; second, the defendant must show that "such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998) (block quote format and citation omitted).

As noted, because people do not get lost in their own driveway, Kim's statement that her car became stuck when she "got lost and tried to turn around" was compelling evidence that she did not live at the Rosebank Place location where her car was found teetering between two driveways. Therefore, Officer Aguiar's hearsay testimony that Kim complains about only served to corroborate what was already obvious from the evidence previously admitted -- that Kim did not live at that Rosebank Place location. There was also undisputed evidence that Rosebank Place is a public road and that it is the only road that provides access to the driveways where Kim's car was stuck. Under these

8

circumstances, we conclude that Kim has not met her burden of showing that the alleged deficient performance of her trial counsel "resulted in either the withdrawal or substantial impairment of a potentially meritorious defense."  See id.

CONCLUSION

Based on the foregoing, we affirm the District Court's Judgment.

DATED: Honolulu, Hawai'i, May 31, 2017.

On the briefs:

Jonathan Burge
for Defendant-Appellant.

Sonja P. McCullen
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge